UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK DAVID WOOD,

        Petitioner,

v.                                      Case No. 2:09-cv-26
                                      HON. GORDON R. QUIST

TERRI SMITH,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Mark David Wood filed this petition for writ of habeas corpus challenging the validity of his state court conviction. Petitioner was convicted of first-degree fleeing and eluding after a jury trial, MCL 257.602a(5). The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his petition:

I.      Petitioner was denied due process when trial court failed to instruct jury about both factual and proximate cause.

II.     The evidence presented at trial was insufficient to establish beyond a reasonable doubt that Petitioner's actions resulted in officer's death.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find

a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that the trial court's instructions given to the jury were insufficient because they did not include any reference or explanation of proximate causation. The United States Supreme Court has held that there is no cognizable federal habeas action unless a jury instruction influenced the entire trial and the resulting conviction therefore violated due process. In order to show a constitutional violation, petitioner must demonstrate that the instruction violated due process. *Henderson v. Kibbe*, 431 U.S. 145, 153 (1997).

>The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'"

431 U.S. at 154 (citations omitted).

In the present case, petitioner claims that an explanation of proximate cause would have asked the jury to consider whether the officer's death was the "direct and natural result" of his conduct, and whether the result was "reasonably foreseeable." Petitioner argues that if the "reasonably foreseeable" element would have been included in the jury instruction, the jury would have found him guilty of the lesser charge of fourth degree fleeing and eluding. The Michigan Court of Appeals rejected petitioner's claim explaining:

>Defendant claims that his fleeing the police vehicle did not "result in" the police officer's death; rather, the officer's loss of control of his own vehicle during the pursuit of defendant resulted in the officer's death. Defendant misapprehends the statute.

>The issue presented here is one of statutory interpretation, a question of law that is reviewed de novo on appeal. See *People v Schaefer*, 473 Mich 418, 427, 703 NW2d 774 (2005), as modified by *People v Derror*, 475, Mich 316, 319, 715 NW2d 822 (2006). Principles of statutory interpretation govern our review, including our duties: (1) to give effect to the intent of the Legislature as expressed by the statute's actual language, (2) to interpret, not write, the law, and (3) to enforce the statute's clear and unambiguous language without judicial construction. *Id.* at 430-431.

>Fleeing and eluding that "results in the death of another individual" is a first-degree charge. MCL 257.602a(5). The meaning of the phrase "results in" is at issue here. Because the phrase has not acquired a unique meaning at law, we may consult a lay dictionary for guidance regarding its definition. See *Robinson v Detroit*, 462 Mich 439, 456 n. 13, 613 NW2d 307 (2000). "Result" is defined by *Random House Webster's College Dictionary* (1997) as: "1. to arise

or proceed as a consequence of actions, premises, etc.; be the outcome.  2. to end in a specified manner or thing[.]" In *Robinson*, our Supreme Court, consulting a lay dictionary, similarly defined the term "result" as:  "'To occur or exist as a consequence of a particular cause[;] To end in a particular way[;] The consequence of a particular action, operation or course; outcome.'" *Robinson, supra* at 456, quoting *American Heritage Dictionary, Second College Ed.*, p. 1054.

Defendant contends that "interpretation of the term 'result' necessarily requires consideration of the term 'cause.' " In essence, defendant is arguing that interpretation of the term "result" should be the same as when the term "cause" is used in a statute. We disagree. Although it is axiomatic that a result must be caused, by using the word "result" instead of "cause" in the statute, the Legislature specifically directed that only factual causation need be established. The phrase "results in" is more general and broader in scope than the term "cause," which has acquired a unique, technical meaning in the law. See *Schaefer, supra* at 435.  This distinction has been noted by our Supreme Court.

First, in *Schaefer*, a case interpreting MCL 257. 625(4), the statute pertaining to operating a motor vehicle while under the influence of liquor and thereby causing death, our Supreme Court specifically addressed the significance of the Legislature's use of the phrase "causes the death" rather than "results in death." *Id*. at 439 n. 67.  The Court noted the following:

> Had the Legislature intended to require only factual causation and not proximate causation as well, the Legislature would have instead used the words "*results* in death" rather than "*causes* the death."

Indeed, MCL 257.617, which requires motorists involved in accidents to remain at the scene of the accident, specifically uses the phrase "results in . . . death." Section 617(2) provides:

> [I]f the individual [flees the scene of an accident] and the accident *results in serious impairment of a body function or death*, the individual is guilty of a felony punishable by imprisonment for not more than 5 years or by a fine of not more than $5,000.00, or both. [Emphasis added.]

Accordingly, the Legislature is well aware of how to draft a statute that requires only factual causation and not proximate causation.

The United States Court of Appeals reached the same conclusion in construing an analogous federal criminal statute: distribution of a controlled substance resulting in death, 21 U.S.C. 841. Specifically § 841(a)(1) makes it illegal to "knowingly or intentionally ... distribute . . . a controlled substance" and § 841(b)(1)(C) provides an enhanced sentence "if death or serious bodily injury *results* from the use of such substance. . . ." (Emphasis added.) In recently addressing the proximate cause issue, the United States Court of Appeals for the Ninth Circuit held:

> [P]roximate cause is not a required element for conviction and sentencing under § 841(b)(1)(C) . All that is necessary under the statutory language is that "death . . . results" from the offense described in § 841(a)(1) . . . . Cause-in-fact is required by the "results" language, but proximate cause . . . is not a required element. [*United States v Houston*, 406 F3d 1121, 1124-1125 (CA 9, 2005).]

In so holding, the Ninth Circuit joined numerous other circuits that reached the same conclusion. See *United States v Soler*, 275 F3d 146, 152 (CA 1, 2002); *United States v McIntosh*, 236 F3d 968, 972-973 (CA 8, 2001); *United States v Robinson*, 167 F3d 824, 830-832 (CA 3, 1999); *United States v Patterson*, 38 F3d 139, 145-146 (CA 4, 1994).

Therefore, if the Legislature had intended to eliminate proximate causation as an element of OUIL causing death, it would have used the phrase "and by the operation of that motor vehicle the death of another person *results*." The Legislature, however, deliberately chose to use the word "cause" in § 625(4) and thereby incorporated the technical, legal meaning of the term. [*Schaefer, supra* at 439-440 n. 67.]

Michigan Court of Appeals' Opinion, Docket #20, at 2-4.

As the Michigan Court of Appeals explained, the trial court correctly applied the principles of statutory interpretation into the relevant statute. It was the Legislature's intent to eliminate proximate causation as an element of conviction and sentencing under MCL 257.602a. In the opinion of the undersigned, the instruction did not so infect the trial as to result in a conviction

- 6 -

that violates due process. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application, of clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In his second claim, petitioner argues that there existed insufficient evidence at trial to support his first degree fleeing and eluding conviction. Petitioner relied on *Robinson* where the Court held that "plaintiffs cannot satisfy the 'resulting from' language of the statute where the pursuing police vehicle or object." *Robinson, supra* at 457. Petitioner argues that the evidence in this instant case only proved that the crash and the officer's death resulted from him losing control of his vehicle, but could not prove that the officer's death resulted from his actions. The Michigan Court of Appeals rejected Petitioner's claim explaining:

> Defendant relies on *Robinson* for his argument that, because he did not hit the police vehicle or physically force it off the road or into another object, he should not be held liable for first-degree fleeing and eluding. But, this analysis from *Robinson* does not apply under the circumstances of this case. First, as already noted, in interpreting the phrase "resulting from" the Supreme Court explicitly acknowledged that a narrow construction was appropriate because an exception to governmental immunity was at issue. Second, the factual scenario presented in *Robinson* was in stark contrast to the factual scenario presented here. The question in *Robinson* was whether a police officer, who was attempting to uphold the law, could be held liable under civil law for injuries that occurred during a high speed chase of a fleeing defendant. Here, the question is whether the fleeing defendant, who was breaking the law, can be held criminally liable for the death of another individual that occurred during the high speed chase of him. See MCL 257.602a. We conclude that *Robinson* does not suggest that a narrow interpretation of the statutory language at issue in this criminal case is warranted.

We now turn to whether defendant's criminal act of fleeing and eluding resulted in the police officer's death. Clearly it did. The only causation required by the statutory language is factual causation, not proximate causation. Factual causation means just that: was defendant's criminal conduct a factual cause of the officer's death; or, but for defendant's fleeing and eluding, would the officer's death have occurred? See *Schaefer, supra* at 435-436. Because the officer's death would not have occurred absent defendant's fleeing and eluding, i.e., the police officer would not have lost control of his vehicle during the pursuit of the fleeing defendant, factual causation exists.

We are cognizant of the fact that the use of the phrase "results in" instead of "causes" may cast a wider net with regard to the imposition of criminal liability. That is an issue for the Legislature, not the judiciary. Defendant argues that criminal liability should never be imposed absent a finding of proximate cause. He relies on *People v. Tims*, 449 Mich 83, 534 NW2d 675 (1995), in support of his argument. But, again, defendant misapprehends that case. The *Tims'* case involved two different statutes, MCL 750.321–the manslaughter statute which does not define the offense, and MCL 750.324–the negligent homicide statute which includes the causation element "cause." *Tims, supra* at 94-95. Because the Legislature failed to provide a causation element in the one instance and provided "no guidance regarding the scope of that [causation] element" in the other instance, the *Tims'* Court was required to turn to the common law for guidance with regard to these elements. *Id.*

Michigan Court of Appeals' Opinion, Docket #20, at 4-5.

A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id.* It is clear that the evidence was sufficient to establish that petitioner committed the crime. The Michigan Court of Appeals' decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was

based upon an unreasonable determination of the facts in light of the evidence presented in the sate court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Petitioner has failed to establish that there was insufficient evidence presented at trial to support his conviction. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley                                    
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   July 8, 2011